IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SALOME VARELA, ) | |
| ) | |
| Movant, ) | No. 02 C 1945 |
| ) | |
| v. ) | |
| ) | Honorable Charles R. Norgle |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Salome Varela's amended motion to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255. Movant, Salome Varela ("Varela") challenges his sentence for participating in a RICO conspiracy, kidnapping, violating the Hostage Act, assaulting a federal officer, and using a firearm during a crime of violence. For the reasons stated below, the motion is denied.

### I. BACKGROUND[1]

**A. Facts**

Varela, along with Defendants Miguel Torres ("Torres"), Jose de la Paz Sanchez ("Sanchez"), and Jesus Ruiz ("Ruiz"), acted as an enforcer for a cocaine trafficking operation located in El Paso, Texas. In order to enforce the payment of drug debts, the Defendants kidnapped four individuals. The Defendants believed that these individuals either owed, or were

---

[1] The facts of this case are recited in United States v. Torres, 191 F.3d 799 (7th Cir. 1999). The court takes additional details from the Government's Response to Defendant's Amended Motion to Vacate Sentence.

1

related to someone who owed, money to individuals in El Paso. After kidnapping the victims, the Defendants contacted the victims' families and demanded ransom. The victims were held in two separate locations in Chicago, Illinois. As will be explained in greater detail below, this scheme ultimately resulted in the murder of one victim, and ended only after a high-speed car chase during which Varela pointed a gun at a federal agent.

One of the victims, Jesus Avila ("Avila"), was abducted by Defendants Ruiz, Torres, and Sanchez, and taken away by a blue and white van to a house on Newland Avenue in Chicago. During the abduction, all three Defendants were armed; Torres was armed with a machine gun. Avila was bound with duct tape and handcuffed to a post in the basement of the Newland Avenue house, where the Defendants beat him, and threatened his life. At one point, Ruiz pointed a gun towards Avila's head and cocked the trigger. The Defendants then placed ransom calls to Avila's sister and wife, telling them that Avila would be killed and dumped into a garbage can if sufficient ransom was not paid. Avila's sister and wife then paid the Defendants $10,000, and delivered three cars to the Defendants. Avila ultimately was able to escape from the Newland Avenue house after fifteen days of captivity.

Two other victims, Jesus Flores ("Flores") and Rafael Martinez ("Martinez"), were also abducted into the blue and white van by the Defendants, and handcuffed to poles in the Newland Avenue house. Flores was abducted because his son owed drug debts. Martinez was abducted because of his own drug debts. Like Avila, both Flores and Martinez were threatened with physical harm if the debts were not paid. The Defendants made ransom calls to Flores' wife, at which time Mrs. Flores advised the Defendants that Flores suffered from diabetes, and required daily medication. The Defendants ignored Flores' diabetes, holding him for nine days without

2

medication. Fortunately for Flores and Martinez, they were able to escape while being led out of the Newland Avenue house at gunpoint.

These events culminated with the kidnapping and murder of seventeen year old Jaime Estrada ("Jamie"). The Defendants abducted Jamie, a high school student, on June 27, 1998. Jamie was held in an apartment on Moody Avenue in Chicago, blindfolded and tied to a chair. The evening of the 27th, one of the Defendants called Jamie's brother Alex and indicated that if ransom was not paid, Jamie would be killed, and the Defendants would cut off Jamie's ears and skin and mail them to Alex. One of the Defendants later shot Jamie in the abdomen. Jamie was then locked alone in a bathroom, bleeding and vomiting. The next morning, one of the Defendants called Jamie's brother Miguel and informed Miguel that they had shot Jamie, and directed Miguel to deliver $30,000 and a car to a specific Chicago location. The Estrada family then contacted law enforcement officials.

At this point, Miguel agreed to participate in a series of recorded telephone conversations with the Defendants. During these calls, Varela and another individual (the fugitive Luis Alberto Carreno) were recorded demanding ransom from Estrada's family, and issuing instructions for the delivery of the ransom. Federal Bureau of Investigation ("FBI") agents then set up a controlled ransom delivery during which FBI agents would apprehend whichever Defendants appeared. Defendants Varela, Ruiz, and Torres drove to the delivery site. Ruiz then attempted to gain entry to car in which the ransom had been placed. FBI agents spotted Ruiz, and moved to apprehend him. The Defendants fled, with Varela pointing a 9-millimeter Beretta pistol at an agent. The Defendants then led the agents on a high-speed car chase during which the Defendants ran red lights, and reached speeds of nearly 100 miles per hour on the Stevenson

Expressway. After an agent rammed the Defendants' car, the Defendants were apprehended. (Sanchez was apprehended separately.)

The following morning, Jamie was located at a used car lot on the west side of Chicago. In addition to his gunshot wound (a one and one half inch wide wound to his abdomen), Jamie had been handcuffed and beaten. After thirty days in the hospital, Jamie succumbed to his injuries. The coroner determined that Jamie died from the gunshot wound, and a thirty hour delay in receiving medical treatment.

### B. Procedural History

Varela was charged with participating in a RICO conspiracy (18 U.S.C. § 1962(d)), four counts of violating the Hostage Act (18 U.S.C. § 1201(c)), one count of conspiracy to commit kidnapping (18 U.S.C. § 1201(c)), one count of kidnapping (18 U.S.C. § 1201(a)), one count of assault on a federal officer (18 U.S.C. § 111), and three counts of using a firearm during a crime of violence (18 U.S.C. § 924(c)).

The following is a sampling of the evidence presented against Varela at his jury trial: recorded telephone conversations in which Varela instructed Jamie's family to deliver ransom, the loaded 9-millimeter Beretta pistol Varela pointed at a federal officer during the high speed chase, Varela's fingerprints on titles to cars delivered by Avila's family, Varela's fingerprints inside the blue and white van used to abduct the victims, Varela's fingerprints in both the Newland Avenue house and the Moody Avenue apartment, Jamie's blood stains on a couch in the Moody apartment, and the testimony of numerous witnesses implicating Varela in these crimes. The jury convicted Varela on all counts. The court then sentenced Varela to a term of life imprisonment, plus a term of forty-five years imprisonment, to be served consecutively.

Varela appealed, but the Seventh Circuit affirmed his conviction and sentence. Torres, 191 F.3d at 799. Varela then petitioned the Supreme Court for a writ of certiorari; this petition was denied. Torres v. United States, 528 U.S. 1180 (2000). Finally, Varela filed his Amended Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 on July 9, 2002. Varela's Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). This statute states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255 ¶ 1. If the court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 ¶ 2. In making that determination, the court must review the evidence and draw all reasonable inferences from it in a light most favorable to the government. See United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000); Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

Section 2255 petitions are subject to various bars, including that of procedural default.

5

Section 2255 petitions are "'neither a recapitulation of nor a substitute for a direct appeal.'" McCleese v. United States, 75 F. 3d 1174, 1177 (7th Cir. 1996) (citations omitted). Therefore, a § 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-Constitutional issues that could have been raised on direct appeal, but were not; and (3) Constitutional issues that were not raised on direct appeal. See Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)).

There are two exceptions to the procedural default rule: (1) if the movant demonstrates cause for failing to raise the issue and actual prejudice resulting therefrom; or (2) the court's refusal to consider the Constitutional issue would result in a fundamental miscarriage of justice, which requires a showing of actual innocence. See Belford, 975 F.2d at 313 (collecting authority); see also McCleese, 75 F.3d at 1177-78 (discussing fundamental miscarriage of justice). In light of these principles, the court examines Varela's motion.

## B. Procedural Default

According to the Seventh Circuit, Varela raised three issues on appeal that were worthy of discussion: whether the government failed to establish a legitimate "pattern of racketeering and a RICO enterprise," whether this court's decision not to question potential jurors regarding "biases toward illegal Mexican aliens" denied Varela his Sixth Amendment right to an impartial jury, and whether this court improperly denied Varela "an evidentiary hearing regarding the admissibility of the identification testimony elicited during trial." Torres, 191 F.3d at 804. Varela also raised, *inter alia*, the issue of whether a co-defendant's statements implicating Varela in these crimes were properly admitted into evidence at trial.

Varela now raises the following issues in his § 2255 motion: whether his Confrontation Clause rights, and the hearsay rule, were violated by trial testimony regarding the incriminating statements of a codefendant, whether his counsel was Constitutionally ineffective, and whether his sentence violates the holdings in Apprendi v. New Jersey, 530 U.S. 466 (2000) and United States v. Booker, 125 S. Ct. 738 (2005). Before inquiring into the merits of these issues, the court first considers whether any of these issues are procedurally barred in § 2255 motions.

The first issue Varela raises is whether his Confrontation Clause rights were violated by admitting into evidence testimony regarding statements of codefendants which incriminated him. Varela raised this issue on direct appeal, asserting, *inter alia*, that these statements were inadmissible hearsay. Joint Consolidated Br. and Required Short App. for the Defs.-Appellants, 46-59. Because Varela raised this issue on direct appeal, and has made no showing of changed circumstances, he is procedurally barred from bringing this issue in his § 2255 motion. See Belford, 975 F.2d at 313; McCleese, 75 F.3d at 1177-78. The exceptions to the procedural default rule do not apply to Varela, as he has made no showing of actual innocence. See Belford, 975 F.2d at 313; McCleese, 75 F.3d at 1177-78.

The second issue Varela raises is whether his counsel was Constitutionally effective. See Strickland v. Washington, 466 U.S. 668, 685-86 (1984) ("The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results . . . [T]he right to counsel is the right to effective assistance of counsel.") (internal quotation marks and citations omitted). Varela failed to raise this issue on direct appeal, and does not meet the requirements for the exceptions to the procedural default rule. However, the Supreme Court has recognized that an ineffective

7

assistance of counsel claim may be brought in a § 2255 motion, regardless of whether the claim was raised on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003). Varela's ineffective assistance of counsel claim therefore survives procedural default.

The third and final issue Varela raises in this motion, whether his sentence violates the holdings in Apprendi and Booker, is a Constitutional issue as well. See Booker, 125 S. Ct. at 756 (affirming the holding in Apprendi, 530 U.S. at 466, and holding that the Sixth Amendment right to trial by jury requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Varela failed to raise this issue on direct appeal, but he could not have done so, as Apprendi was decided June 26, 2000, and Booker was decided January 12, 2005. Varela's appeal was decided September 15, 1999. Varela is therefore not procedurally barred from bringing this issue in his § 2255 motion under the rules laid down in Belford, 975 F.2d at 313 and McCleese, 75 F.3d at 1177-78.

However, the Seventh Circuit has held that Apprendi "does not disturb sentences that became final before June 26, 2000, the date of its release." United States v. Curtis, 294 F.3d 841, 844 (7th Cir. 2002); see also Lambert v. McBride, 365 F.3d 557, 562 (7th Cir. 2004). The Seventh Circuit has also held that Booker "does not apply retroactively to criminal cases that became final before its release on January 12, 2005." McReynolds v. United States, 397 F.3d 479, 480 (7th Cir. 2005); see also United States v. Paladino, — F.3d — (7th Cir. 2005). Varela's conviction became final February 22, 2000, the date the Supreme Court denied his petition for writ of certiorari. Torres v. United States, 528 U.S. 1180 (2000). Varela's Apprendi/Booker

8

claim is therefore procedurally barred under the rules explained in Curtis, 294 F.3d at 844 and McReynolds, 397 F.3d at 480.

The court therefore finds that the first issue Varela raises, whether testimony regarding the incriminating statements of a codefendant violated Varela's Confrontation Clause rights and the hearsay rule, and the third issue Varela raises, whether his sentence violates the holdings in Apprendi v. New Jersey, 530 U.S. 466 (2000) and United States v. Booker, 125 S. Ct. 738 (2005), are procedurally barred. However, the court finds that the second issue Varela brings, whether his counsel was Constitutionally ineffective, is not procedurally barred.

## C. The Merits of Varela's Claims

Although the court has determined that only the issue of whether Varela's counsel was Constitutionally effective survives procedural default, with an abundance of caution, the court will also address the merits of the first issue Varela raises: whether adverse witness testimony at trial violated the Confrontation Clause and the hearsay rule. The court will not addresses the merits of Varela's final assertion, that his sentence violated the holdings of Apprendi and Booker, because of the Seventh Circuit's recent and exceedingly clear holdings that Apprendi and Booker are not applicable retroactively. See Curtis, 294 F.3d at 844; see also Lambert, 365 F.3d at 562 ; McReynolds, 397 F.3d at 480.

### 1. The Incriminating Statements of a Codefendant

At trial, two relatives of nontestifying Defendant Sanchez were allowed to testify as to various incriminating statements made by Sanchez. These relatives, Cosme Duarte and Evaristo Ramirez, testified that, *inter alia*, Sanchez had come to them and explained that he was involved

in a kidnapping scheme with Varela and the other Defendants, that the Defendants were taking orders from individuals in El Paso, and that the Defendants had shot Estrada. This testimony was admitted pursuant to Federal Rule of Evidence 804(b)(3) as a hearsay exception, a statement against interest. Varela now asserts that these statements violated the hearsay rule, and the Confrontation Clause of the Constitution.

Rule 804(b)(3) states, in part, that:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . (3) A statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement without believing it to be true.

In order for this hearsay exception to apply, (1) the declarant must be unavailable to testify at trial, (2) the statement must be against the declarant's penal interest, (3) and corroborating circumstances must exist which indicate that the statement(s) are trustworthy and reliable. United States v. Shukri, 207 F.3d 412, 416 (7th Cir. 2000); American Auto. Accessories, Inc. v. Fishman, 175 F.3d 534, 540 (7th Cir. 1999).

Varela attacks the third prong of the Shukri/American Auto. test, asserting that Sanchez's statements implicating Varela should not have been admitted because these statements did not contain sufficient corroborating indicia of their trustworthiness and reliability, as Sanchez had motive to shift blame and divert attention to others. First, the court notes that Sanchez's statements naming the other Defendants, and indicating that he was involved with them in the kidnappings, "demonstrated [his] inside knowledge of yet another detail of the planned crime." See United States v. York, 933 F.2d 1343, 1360-61 (7th Cir. 1991) (statements that demonstrate "inside knowledge of a crime," and that "tend to implicate the

10

declarant in a conspiracy" are thought to be sufficiently reliable to fall within the 804(b)(3) exception). Second, these statements were made to relatives in a non-custodial setting. There is no significant incentive to shift blame in such a setting, as there might be in, for instance, a custodial police interview. See United States v. Moses, 148 F.3d 277, 280-81 (3rd Cir. 1998) (finding that where declarant made his statements to a friend during a lunch conversation, there was no reason to believe that the declarant was attempting to avoid criminal liability) (citing Williamson v. United States, 512 U.S. 594, 603-04 (1994)). Although the court did not make a specific finding of trustworthiness as to the challenged statements at trial, the above considerations indicate that these statements were sufficiently trustworthy to be admitted under Rule 804(b)(3).

Although the question of whether these statements violated the Confrontation Clause is related to the question of whether these statements violated the hearsay rule, these are separate issues. See United States v. Vretta, 790 F.2d 651, 660 (7th Cir. 1986) ("the hearsay rules and the Confrontation Clause of the Sixth Amendment stem from the same root, but the two are not equivalent"); see also United States v. Centracchio, 265 F.3d 518, 527 (7th Cir. 2001) ("The Confrontation Clause of the Sixth Amendment guarantees the accused the right 'to be confronted with the witnesses against him'"); Flewallen v. Faulkner, 677 F.2d 610, 612 (7th Cir. 1982) (the Confrontation Clause is generally utilized to assure that a defendant has a right to cross examine adverse witnesses, but may be used to bar the prosecution's use of hearsay testimony). "[E]vidence that is admissible under a hearsay exception may be barred if it violates the defendant's Sixth Amendment right to confront witnesses against him." Vretta, 790 F.2d at 660.

In determining whether an out-of-court statement violates the Confrontation Clause, courts must determine whether the statements meet a minimum level of trustworthiness. United States v. Robbins, 197 F.3d 829, 837 (7th Cir. 1999); see also Webb v. Lane, 922 F.2d 390, 393 (7th Cir. 1991) ("The use of hearsay testimony does not violate the confrontation clause if the prosecutor can demonstrate (1) the unavailability of the declarant and (2) that the declarant's statement bears adequate indicia of reliability.") (internal quotation marks and citations omitted).

In this case Sanchez, the declarant, was unavailable, as he was a nontestifying codefendant. See Morrison v. Duckworth, 929 F.2d 1180, 1182 n.2 (7th Cir. 1991) (unavailability includes a declarant's refusal to testify on Fifth Amendment grounds); see also United States v. Pizarro, 756 F.2d 579, 582-83 (7th Cir. 1985) (codefendant's refusal to testify at trial "rendered him unavailable"). The challenged statements were clearly self-inculpatory, and were made to relatives in a non-custodial setting. These statements were thus sufficiently trustworthy or reliable to pass muster under the Confrontation Clause. See Robbins, 197 F.3d at 837; Webb, 922 F.2d at 393. The admission of these statements at trial therefore did not violate Varela's Confrontation Clause rights.

*2. Ineffective Assistance of Counsel*

In order to establish that his counsel was ineffective, Varela must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Prejudice is

12

established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Benefiel v. Davis, 357 F.3d 655, 662 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). An ineffective assistance of counsel claim may be brought in a § 2255 motion, regardless of whether the claim was raised on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). There is therefore a strong presumption that Varela's attorney performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Varela must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

Varela asserts that his counsel was inefficient, as he failed to investigate certain evidence Varela asserts was exculpatory, and he failed to present that evidence at trial. Specifically, Varela asserts that he gave his attorney documents that explained the "cause of the kidnapping of Jamie Estrada," that his attorney failed to investigate this allegedly exculpating evidence, and that his attorney did not present this evidence to the jury at trial. Am. Mot. to Vacate, 13. These failures, Varela asserts, amount to Constitutionally ineffective assistance of counsel. Varela asserts that the documents he points to, summarizations of interviews done by FBI agents during the course of the investigation of the kidnappings, indicate that he was not involved in Jamie's

13

kidnapping.

In rare cases, an attorney's failure to investigate or to present certain evidence can constitute ineffective assistance of counsel. See Sullivan v. Fairman, 819 F.2d 1382, 1390 (7th Cir. 1987). However, in general, an attorney's decision not to present certain evidence "is a tactical decision not subject to review." Barnhill v. Flannigan, 42 F.3d 1074, 1078 (7th Cir. 1994). The court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). These documents do not provide obvious exculpatory evidence for Varela. In fact, one of the documents refers to a "full size blue and white van" that was parked outside the residence where Jamie's kidnapping was planned. Am. Mot. to Vacate, App. 2. Varela's fingerprints were found inside a blue and white van that was used in the kidnappings. Varela's attorney may well have determined that these documents did not, in fact, exculpate Varela, and that to present this evidence at trial would be a bad tactical decision. Whatever the reason for the attorney's decision not to investigate or present this evidence, the court finds that this decision was a tactical one "not subject to review." See Barnhill, 42 F.3d at 1078; Harris, 894 F.2d at 877.

Finally, the court notes that Varela admits that his attorney "provided exemplary representation." Am. Mot. to Vacate, 14. Rarely does a Defendant acknowledge that his counsel was "exemplary," and then, in the same breath, assert that counsel was ineffective. Varela has not shown that his attorney made "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment . . . ." See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687). For the above reasons, the court determines that Varela's

counsel was not Constitutionally ineffective.

**D. Varela's Request for an Evidentiary Hearing**

Varela requests an evidentiary hearing in this matter, but he does not explain what issues would be inquired into during this hearing, nor does he explain why an evidentiary hearing is necessary. Am. Mot. to Vacate, 18. This alone is sufficient reason to deny Varela's request. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (noting that an undeveloped argument speaks to its paucity, and that courts are not required to consider such arguments). Evidentiary hearings are not required if the § 2255 "motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶ 2; see also Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001); Daniels v. United States, 54 F.3d 290, 293 (7th Cir 1995). In this case, two of Varela's claims are barred on procedural grounds. His Confrontation Clause/hearsay claim fails on the merits. His ineffective assistance of counsel claim falls well short of the Strickland standard. The record thus conclusively shows that Varela is entitled to no relief under § 2255. Varela's request for an evidentiary hearing is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Salome Varela's amended motion to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255 is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 3/7/05

15